In re Joseph J. SALINARDI and
Catherine P. Salinardi,
Debtors.

Cadlerock Joint Venture
II, L.P., Plaintiff,

v.

Joseph J. Salinardi and Catherine
P. Salinardi, Defendants.

Bankruptcy No. 02–34471.
Adversary No. 03–3091.

United States Bankruptcy Court,
D. Connecticut.

April 6, 2004.

---

Michael G. Albano, Esq., Sabia & Hartley, LLC, Hartford, CT, for Plaintiff.

Mark M. Kratter, Esq., Stamford, CT, for Debtor–Defendants.

## MEMORANDUM OF DECISION ON MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT

ALBERT S. DABROWSKI, Chief Judge.

### I. INTRODUCTION

The present matter highlights the unique concerns inherent in the consensual resolution of adversary proceedings contesting the general discharge of debtors. In the instant proceeding, the Debtor–Defendants and the Plaintiff–Creditor seek to have this Court approve a settlement in which they propose that the pending adversary proceeding objecting to discharge be dismissed, and $50,000.00 of the Plaintiff's claim be excepted from any discharge hereafter granted to the Debtors. For the reasons which follow, the Court declines to approve the settlement proposed by the parties.

### II. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant proceeding by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1). This is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(J).

### III. PROCEDURAL BACKGROUND

The Complaint in the instant adversary proceeding[1] seeks to have the Debtors' discharges denied in their entirety under the authority of Bankruptcy Code Section 727(a) based upon allegations, *inter alia*, that the Debtors engaged in an orchestrated pattern of concealment of income and other assets designed to subvert the legitimate efforts of creditors to collect on their debts.[2]

---

1. This adversary proceeding was timely commenced on June 23, 2003, following several extensions of the bar date for the filing of objections to discharge. Each such extension was requested by, and granted in favor of, the Plaintiff. No other creditors requested extensions of time to file discharge objections, although the United States Trustee requested, and was granted, an extension through February 24, 2003.

2. The Plaintiff's Complaint alleged the following alternative grounds under Section 727 for denial of the Debtors' discharges: *Count One* (Code Section 727(a)(2)(A)—pre-petition fraudulent transfers), *Count Two* (Section 727(a)(2)(B)—post-petition fraudulent trans-

On November 4, 2003, the Plaintiff filed a ... *Motion for Summary Judgment as to Counts One, Two and Four*, Doc. I.D. No. 14. On February 5, 2004, this Court issued its *Memorandum of Decision on Motion for Summary Judgment*, wherein the Court observed that the Plaintiff's case appeared "formidable on paper", yet denied summary judgment on the basis of policy and prudential concerns specific to discharge objection proceedings (hereafter, the "Summary Judgment Decision"). In addition, the Court scheduled a status conference for March 2, 2004, for the purpose of streamlining the parties' presentation at trial, which was scheduled for March 22, 2004 (hereafter, the "Status Conference Order").

However, unbeknownst to this Judge at the time of the issuance of the Summary Judgment Decision and Status Conference Order, the Plaintiff and Defendants had, on February 3, 2004, filed a *Joint Motion for Order Approving Compromise and Settlement Agreement*, Doc. I.D. No. 21 (hereafter, the "Joint Motion"), seeking approval of a settlement of the instant adversary proceeding. The Joint Motion represents that "[i]n an effort to resolve amicably their differences, and enable the Salinardis to receive their discharge" the parties propose a compromise with the following material terms: (i) the Plaintiff will "voluntarily dismiss the Complaint pursuant to Bankruptcy Rule 7041(a)(2) [sic]"; and (ii) in exchange for such "dismissal", the Debtors agree that "in the event that they receive their discharge,[3] $50,000.00 of the debt would remain non-dischargeable and would continue to be owed to [the Plaintiff] CadleRock ...." (hereafter, the "Settlement Agreement"). On February 4, 2004, the Debtors' Chapter 7 trustee (hereafter, the "Trustee") filed an Objection to the proposed Settlement Agreement. The Clerk scheduled a hearing (hereafter, the "Hearing") on the Joint Motion and Trustee's Objection for March 2, 2004—the same date and time as the Status Conference.

On February 18, 2004, the Court approved a request by the Plaintiff—with the consent of the Defendants and the Trustee—to expedite the Hearing from March 2 to February 25, 2004 (hereafter, the "Motion to Expedite"), on the theory that if the Settlement Agreement were approved on February 25, the trouble and expense of preparation for the Status Conference could be obviated. At the time of the expedited Hearing, the Trustee withdrew her Objection in light of the Plaintiff's counsel's record representation that the instant litigation had not brought to his attention any yet-undisclosed assets, and that he did not anticipate that any such information would be developed at trial. The Court then inquired of the parties as to their compliance with the dictates of *In re Chalasani*, 92 F.3d 1300, 1309–13 (2d Cir.1996). The parties admitted at that time that they had not provided the requisite notice to interested persons as required by *Chalasani*, and the Court instructed them to prepare and serve such a notice. The Plaintiff then prepared, and on February 26, 2004, served upon all in-

---

fers), *Count Three* (Section 727(a)(3)—concealment and other misconduct regarding financial records), *Count Four* (Section 727(a)(4)(A)—false oath), *Count Five* (Section 727(a)(4)(B)—false claim), *Count Six* (Section 727(a)(5)—failure to explain loss of assets), and *Count Seven* (Section 727(a)(6)(A)—refusal to obey court order).

3. It is not clear from the record what possible circumstance(s) the parties envisioned as preventing the entry of a discharge after the dismissal of the instant adversary proceeding. Although D.Conn. LBR 7041–1(b) creates the possibility of discharge denial despite adversary proceeding dismissal, *see* fn. 4, it does not appear to have been within the contemplation of the parties at the time.

terested parties, a notice containing the following information, in pertinent part:

> **PLEASE TAKE NOTICE** that any party seeking to intervene or be substituted as plaintiff in this adversary proceeding, *see In re Chalasani*, 92 F.3d 1300, 1309–13 (2d Cir.1996), shall file with the Clerk ... a written Motion to Intervene as Plaintiff no later than Wednesday, March 17, 2004 .... A hearing on any Motion to Intervene as Plaintiff, will be held on Wednesday, March 24, 2004 .... In the absence of the timely filing of a Motion to Intervene as Plaintiff, an order dismissing the Adversary may enter without further notice.

(hereafter, the *"Chalasani* Notice"). No motion to intervene or be substituted as plaintiff was timely-filed with the Clerk.

Also at the Hearing, the Court inquired of the parties as to their ability to comply with Rule 7041–1(b) of the Local Rules of Bankruptcy Procedure of the District of Connecticut (hereafter, the "Local Rules"). Given the nature of the Settlement Agreement, the Court expressed (i) its preliminary view that illicit "consideration" was flowing to the Plaintiff, and (ii) serious doubt that the requisite affidavits and statement of "no consideration" could be prepared and filed by the Debtors and their attorney.[4] Nonetheless, the Court agreed to receive the arguments of counsel in favor of approval of the Settlement Agreement at a continued hearing to be held March 2, 2004. The following Discussion constitutes the Court's Findings of Fact and Conclusions of Law on that matter.

## IV. DISCUSSION

### A. Applicable Legal Standards.

Bankruptcy Rule 7041 provides in pertinent part as follows:

... a complaint objecting to the debtor's discharge shall not be dismissed at the plaintiff's instance without notice to the trustee, the United States Trustee, and such other persons as the court may direct, and only on order of the court containing terms and conditions which the court deems proper.

Fed. R. Bank. P. 7041 (2002). Local Rule 7041–1 provides in pertinent part as follows:

> (a) No adversary proceeding to deny a discharge shall be withdrawn, dismissed, or settled except upon an order of the court after notice to the trustee, all creditors, and other parties in interest and a hearing.

> (b) In the event of a dismissal of an adversary proceeding to deny the discharge of a debtor, no discharge shall be granted unless the debtor shall file an affidavit and the debtor's attorney shall sign and file a statement that no consideration has been promised or given, directly or indirectly, for any such dismissal.

D.Conn. LBR 7041–1(a), (b) (2002) (hereafter, the "Local Rule").

The foregoing Rules highlight the unique policies and concerns which attend the settlement of adversary proceedings brought to deny a debtor's discharge in its entirety. Those policies recognize that a bankruptcy discharge is an extraordinary debtor remedy which impacts the rights of a *universe* of creditors. The extraordinary relief of a discharge is considered a "privilege", not a "right", accorded only to debtors who conduct their financial affairs with honesty and open-

---

4. The inability of the Debtors and their counsel to certify "no consideration" in exchange for dismissal would prevent the entry of discharge under Local Rule 7041–1(b), and thus render any court approval of the Settlement Agreement a pyrrhic victory for the Debtors.

ness. The specific instances of discharge-disqualifying conduct are codified in Bankruptcy Code Section 727(a). In general, these grounds can be characterized as conduct which is injurious to the bankruptcy process and/or to the entire universe of creditors, not just to the claims of a specific creditor. By contrast, actions which are only illicit vis-a-vis the claim of an individual creditor are made the grounds for an *exception* from the general discharge by the terms of Bankruptcy Code Section 523(a).[5]

## B. The Risks of an Unregulated Settlement System.

█ Because the denial of a discharge "imposes an extreme penalty for wrongdoing", *Chalasani*, 92 F.3d at 1310, it constitutes a "big hammer" in the hands of an objecting creditor. Thus, an objecting party enjoys a natural leverage in litigation which is unusually and disproportionately large in relation to the risk of adverse judgment. This leverage, if left unchecked, would routinely drive debtors to seek settlements of discharge objections, even if they are innocent of any wrongdoing.[6] Thus an *unregulated* system would naturally provide an opportunity for a creditor to pursue a discharge objection with the primary goal of extracting a settlement, levered not by the merits of the cause of action, but by the enormity of the potential loss to the debtor. In theory, the "big hammer" of discharge denial provides the power to leverage even the smallest suggestion of illicit conduct into a substantial settlement. Accordingly, a debtor's discharge is generally not a proper subject for private negotiation, and the exchange of a *quid pro quo. See Chalasani* at 1310.

█ In addition to inappropriately coercing settlements from innocent debtors, an unregulated system also risks a mis-allocation of the settlement resources. Assume, *arguendo*, that an objection to discharge has a substantial basis in fact, and that a debtor, while pleading his innocence, nonetheless recognizes a significant litigation risk and desires to offer consideration in exchange for a dismissal of the objection. And assume further that the plaintiff-creditor, appreciating its own litigation risk, also desires to settle its objection for some economic consideration. Such forces, in an *unregulated* system, would invariably produce a settlement in which economic consideration flows from the debtor to the individual private benefit of the plaintiff-creditor, rather than to the creditor body as a whole. Such would be the result even though the allegedly offending conduct was injurious to the entire creditor body. As observed by the Second Circuit Court of Appeals, Section 727(a) "is directed toward protecting the integrity of the bankruptcy system by denying discharge to debtors who engaged in objectionable conduct that is of a magnitude and effect broader and more pervasive than a fraud on ... a single creditor." *Chalasani*, 92 F.3d at 1311 (quoting *Austin Farm*

---

**5.** The Complaint in the instant proceeding did not plead a cause of action under Section 523(a).

**6.** Congress and the Courts have attempted to "even the playing field" in such litigation by building in certain presumptions to aid the debtor. Thus, Bankruptcy Code Section 727 "must be construed ... 'liberally in favor of the bankrupt'". *E.g., Chalasani*, 92 F.3d at 1310. In addition, a party objecting to the granting of a discharge bears the ultimate burden of persuasion at trial. Fed. R. Bankr.P. 4005. Such policies certainly play a role in tipping the balance by raising an objector's risk of adverse judgment. However, this Court is of the view that in the vast majority of cases the risk to the debtor of discharge denial still far outweighs the litigation risk of the objector.

*Ctr., Inc. v. Harrison (In re Harrison),* 71 B.R. 457, 459 (Bankr.D.Minn.1987)). Accordingly, there should be no "taint of compromise" attending the dismissal of a Section 727 adversary proceeding. *See Chalasani,* 92 F.3d at 1310.

## C. Regulatory Tools.

### 1. Creditor rights.

■ Various tools are available to combat the peril inherent in an unregulated system for the consensual disposition of discharge objections. First, broad-based notice of any proposed disposition of pending litigation is an essential. As noted *supra,* Bankruptcy Rule 7041 requires notice to "the trustee, the United States Trustee, and such other persons as the court may direct". Local Rule 7041–1(a) is more specific—mandating notice to "the trustee, all creditors, and other parties in interest". In addition, within the Second Circuit, a party desiring to dismiss an adversary proceeding objecting to discharge must provide notice to creditors and other parties in interest of that proposed disposition *and* the availability of important non-party rights. Specifically, in lieu of the proposed dismissal of the pending litigation, all parties in interest are to be notified of an opportunity to intervene, or be substituted as plaintiff, for the purpose of continuing such proceeding. This requirement—the so-called *Chalasani* Notice—is an acknowledgment that, in a very real sense, a plaintiff in a Section 727 action prosecutes the same for the benefit of *all* creditors with otherwise dischargeable claims, and that such an action should not be susceptible of dismissal by the plaintiff without an opportunity for other parties—who are materially affected by it, and may have relied on its pendency [7]—to

step into that plaintiff's shoes and continue its prosecution for the common good.

### 2. Court oversight.

■■ In addition to the rights of creditors to object to the settlement of a discharge contest and/or sustain the prosecution of such a proceeding, the courts themselves are given explicit authority to police proposed settlements for evidence of "tainted" compromise. *See, e.g.,* Fed. R. Bank. P. 7041 (dismissal "only on order of the court containing terms and conditions which the court deems proper"); D.Conn. LBR 7041–1(a) ("no adversary proceeding to deny a discharge shall be withdrawn, dismissed, or settled except upon an order of the court"). Because the postures in which discharge litigation is presented to the bankruptcy courts for settlement are myriad, those courts are given broad discretion to fashion appropriate rulings to protect the interests of all parties to a bankruptcy case. *See Id.; Chalasani,* 92 F.3d at 1312–13. At a minimum, and with particular relevance to the matter at bar, if a court believes that the debtor-defendant has given "tainted" consideration to an individual creditor-plaintiff to the exclusion of other creditors with dischargeable claims, it is bound to disapprove such a settlement.

### 3. Debtor obligations.

■ Finally, debtors themselves, and their counsel, are responsible for assuring that the plaintiff does not reap a private benefit in exchange for a dismissal of a discharge objection. Specifically, under Local Rule 7041–1(b), as a condition for discharge entry, a debtor is required to file an affidavit, and the debtor's attorney is required to sign and file a statement, that "no consideration has been promised or

---

**7.** Creditors and other parties in interest may have declined to timely file their own Section

727 complaints in reliance on the filing and prosecution of the plaintiff's complaint.

given, directly or indirectly," for the dismissal of an adversary proceeding to deny the debtor's discharge. The Advisory Committee Note to Bankruptcy Rule 7041 recognizes and supports, as "salutary practice", the use of local bankruptcy rules requiring "no consideration" affidavits, such as exist in this District.

## D. The Proposed Settlement Agreement.

■ The present Settlement Agreement is illustrative of the foregoing principles. In the face of what appears, on paper at least, to be a "formidable" case of misconduct, the Plaintiff has agreed to abandon its objection to the entry of the Debtors' general discharges, so long as its private claim receives advantageous treatment. Specifically, the parties seek to have this Court enter a judgment declaring that $50,000.00 of the Plaintiff's claim shall be carved-out from any discharge, and thus remain non-dischargeable. And although the Debtors and their attorney assert that they are prepared to execute the requisite "no consideration" affidavit and statement pursuant to subsection (b) of the Local Rule,[8] the Court would be unconvinced of the accuracy of those documents, and cannot supply its blessing to the proposed Settlement Agreement.[9]

Despite the Court's concern, the parties maintain that their agreement does not run afoul of the prudentially-inspired dictates of the applicable Rules. Their arguments in this vein, however, are without merit.

As an initial matter, the parties argue that the Debtors are *not* proposing to furnish any consideration in exchange for the settlement of this adversary proceeding. Their argument in this respect seems to be premised on their characterization of the agreement as a "settlement of claims", and the fact that the Debtors are not *presently* parting with any tangible property, but rather, only agreeing that $50,000.00 of the Plaintiff's claim should be excepted from the Debtors' general discharge. The Court fails to appreciate how such an arrangement could be characterized as devoid of debtor "consideration". The concept of legal consideration embraces not only the surrender of tangible property interests, but any detrimental change of position, tangible or intangible, offered as an inducement for an agreement. Here, the Debtors are plainly changing their position to their detriment since they are preserving the ability of the Plaintiff to extract up to $50,000.00 from them in the future, if and when the Plaintiff is able to execute on any such property.

8. The Debtors' counsel's representation in this respect was somewhat hedged. He indicated that he and his clients would *not* be inclined to certify "no consideration" in the event the Court found that consideration was indeed passing.

9. As a technical matter, Local Rule 7041–1(b) does not provide an independent basis of authority for the Court to prevent the settlement of a discharge objection. Read alone, it (i) sets up a presumption that in the context of a dismissal, no discharge shall enter; yet (ii) affords the debtor and its counsel the ability to overcome that presumption through certification that no consideration has been given

for the dismissal. On its face then, the rule appears to afford the court with no ability to "second-guess" the certification of the Debtor and its counsel, save perhaps through an independent referral of apparently false statements to the United States Attorney and/or the Grievance Committee of the United States District Court for the District of Connecticut. Nonetheless, as stated *supra*, the authority of the Court to police settlement agreements for tainted compromise is founded independently upon subsection (a) of Local Rule 7041–1, and upon the general language of Bankruptcy Rule 7041.

Next, the Debtors argue that the Local Rule does not in fact censure the passing of consideration under the present circumstances. The Debtors' argument in this respect is a textual one, based on the absence of the term "settlement" in subsection (b) of the Local Rule. The Debtors contend that subsection (b) only renders the furnishing of consideration illicit when given in exchange for a "dismissal" of a proceeding, not a "settlement" of the same. They claim to find support for the distinction between "dismissal" and "settlement" in the text of subsection (a)—which speaks of withdrawal, dismissal and settlement in the disjunctive. Such an argument is unavailing on a number of levels. First, the assertion that this adversary proceeding is proposed to be "settled", but not "dismissed", is contradicted by the parties' own Joint Motion, which represents that the Plaintiff will "voluntarily *dismiss* the Complaint pursuant to Bankruptcy Rule 7041(a)(2) [sic]" (emphasis supplied). More fundamentally though, dismissal is necessarily part of any settlement in which the litigation is agreed not to be further prosecuted. There is simply no other procedural vehicle under the applicable federal rules for the adversary proceeding to "go away" as the parties contemplate here.[10] Subsection (b)'s exclusive use of the term "dismissal" is a recognition of that truth.

Yet, even if the Debtors' textual argument did not contradict common sense,

their own pleadings, and the scheme of the federal rules, it would not aid them in the present matter. For even if this proceeding were not proposed to be dismissed, that fact would only relieve the Debtors and their counsel of the obligation of certifying "no consideration" under subsection (b) of the Local Rule as a condition to receiving their general discharge. It would in no way detract from the Court's obligation to police the parties' "settlement" for "tainted compromise" under subsection (a) of the Local Rule—which animates the prudential judicial principles discussed at length, *supra*.

██ Finally, the parties urge the Court effectively to ignore the prudential concerns embodied in the Rules because, they conclude, there is no harm to other creditors since those creditors seem to be indifferent concerning this matter. In support of their conclusion, the parties cite to the fact that despite the Plaintiff's provision of the *Chalasani* Notice to all creditors, no such creditor has come forward to avail itself of the opportunity to continue prosecution of the instant adversary proceeding.[11] In essence, the parties believe that a private discharge settlement can pass muster so long as the other creditors have been afforded adequate notice, and such creditors have declined to act on that notice. They claim to find support for this approach in the recent opinion of the Bankruptcy Court in *Hass v. Hass (In re*

---

**10.** At Hearing the parties attempted to recast the mechanics of their settlement as calling for a "stipulated judgment" on the merits of Complaint, not a dismissal of the proceeding. This, however, is subterfuge. One does not properly dispose of one cause of action by stipulating to judgment on a different cause of action. Yet, that is precisely what the parties are attempting to do here—bring a Section 727(a) general discharge objection to a conclusion by stipulating, effectively, to the non-dischargeability of a *particular* debt pursuant to Section 523(a)—relief to which the Plaintiff

must have believed it was not entitled, or it would have pleaded the same in its Complaint.

**11.** As further support for their claim of creditor disinterest, the parties cite to the fact that no creditor other than the Plaintiff sought an extension of the discharge objection bar date, and thus appear to have effectively abandoned any direct interest in a discharge contest.

*Hass)*, 273 B.R. 45 (Bankr.S.D.N.Y.2002). Despite *Hass,* the parties' view of the effect of a *Chalasani* Notice reflects a misunderstanding of applicable law and the inferences that can be drawn from the facts.

In the instant case, when the parties filed the Joint Motion, they did not serve the same on all creditors, or otherwise notify creditors of the proposed Settlement Agreement, as required by Bankruptcy Rule 7041 [12] and Local Rule 7041-1(a). They were attempting to obtain court approval of the Settlement Agreement without notice to any other creditors. Eventually, however, the Joint Motion was served on all creditors; [13] although the Court must conclude that the parties were initially ignorant of the terms of the Local Rule. The parties were also ignorant of the notice requirements of *Chalasani,* until brought to their attention by the Court at the Hearing. At the Court's direction, the Plaintiff then prepared and served the *Chalasani* Notice. Unfortunately, the *Chalasani* Notice, as prepared by the Plaintiff,[14] is deficient in that it lacks material information—regarding the history of the instant litigation and the nature of the Settlement Agreement—with the effect that a recipient of such Notice would not likely understand, from the Notice itself, why intervention or substitution might be important. Yet, even if the *Chalasani* Notice in this case were technically sufficient,

and produced no creditors interested in carrying forward the instant adversary proceeding, this Court would not view its supervisory role as eclipsed thereby.

■ While it is not entirely clear to this Court that the *Hass* court intended to articulate, as its own, the view that the absence of creditor response following a proper *Chalasani* Notice is preclusive of the Court's authority to disapprove a private settlement of a discharge objection,[15] that view can be argued in good faith to find some support in bankruptcy court case law. *See, e.g., In re Hayden,* 246 B.R. 795, 799 (Bankr.D.S.C.1999). Nonetheless, this Court does not subscribe to that view. In the realm of discharge objection, the principles involved are too important, and the opportunity for abuse so high, that the Court must maintain a vigilant oversight role in connection with discharge objections, even in the presence of creditor inaction. In short, the mechanics of the *Chalasani* Notice serve to *supplement* the Court's discretionary oversight of discharge objection dispositions, *not supplant* it.

Further, the lack of creditor response to a *Chalasani* Notice is not necessarily indicative of the absence of creditor harm or prejudice. As with other bankruptcy matters, creditor inertia can often be attributed to considerations other than the merits, including, without limitation, the size of a given creditor's claim. For example, in

---

12. While Bankruptcy Rule 7041 does not specifically require notice to all creditors—opting instead for the phrase, "such other persons as the court may direct"—the parties here did not even request that the Court designate the entities entitled to notice.

13. This was done incident to, and packaged with, the Motion to Expedite.

14. The insufficiency of the *Chalasani* Notice is not entirely the fault of the parties. At the time the Court directed the parties to provide

the Notice, it suggested that the Courtroom Deputy could provide them examples of notices which had been used in previous cases. The deficiencies noted herein may have resulted from the use of these "forms" without substantive modification.

15. Although the text of the *Hass* opinion is a bit ambiguous on this point, at the very least it seems fair to conclude that *Hass* discussed *with approval* decisions of other courts which viewed a *Chalasani*-type notice as dispositive.

the instant case, approximately 65% of the unsecured creditors are scheduled as holding claims of less than $10,000.00, which sum, even if ultimately collectible from the Debtors, would likely not justify the time, cost and effort required to prosecute the instant adversary proceeding to conclusion. To allow creditors' inaction to dictate the Court's approval of a settlement would create a license for a motivated plaintiff to exploit creditor inertia for its own economic benefit.

In sum, the Court concludes that the Settlement Agreement is illicit in its allocation of Debtor consideration to the Plaintiff alone. In classic fashion, the Settlement Agreement leverages allegations of conduct injurious to the creditor body as a whole into a vehicle for the enhancement of the rights of a single creditor.[16]

### V. CONCLUSION

Because the proposed compromise of the instant adversary proceeding provides for the passing of consideration to the Plaintiff alone, in exchange for a dismissal of the adversary proceeding, the Court declines to approve the parties' Settlement Agreement.

### ORDER DENYING APPROVAL OF SETTLEMENT AGREEMENT

The above-captioned *Joint Motion for Order Approving Compromise and Settlement Agreement* (hereafter, the "Motion") having come on for consideration; and the Court having this day issued its *Memorandum of Decision on Motion for Approval of Settlement Agreement,* in accordance with which, it is hereby

**ORDERED** that the Motion is **DENIED.**

---

16. This proceeding is readily distinguishable from a recent decision of the United States District Court for the District of Vermont. In that case, *Wolinsky v. Maynard (In re Maynard),* 269 B.R. 535 (D.Vt.2001), the District Court found error in the Bankruptcy Court's *per se* disapproval of any settlement of a discharge objection in which consideration flowed from the debtors. Rather, the District Court concluded that a settlement in which the offered consideration inured to the benefit of the creditor body as a whole might be proper under appropriate circumstances. *Maynard* is not persuasive in the present proceeding because the consideration offered by the Debtors is directed to the benefit of the creditor-plaintiff alone. This Court need not opine as to whether a similar settlement benefitting the universe of creditors would pass muster.